

Matthew P. MacLeod, Esq. – State Bar #022573
**O'STEEN & HARRISON, PLC**
300 W. Clarendon Ave., Suite 400
Phoenix, Arizona 85013-3424
(602) 252-8888
(602) 274-1209 FAX
mmacleod@vanosteen.com
**Attorneys for Plaintiff**

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Jacqueline McMurrin, for herself and on behalf of the statutory beneficiaries of Theron Hopkins, deceased,<br><br>Plaintiff,<br><br>vs<br><br>United States of America,<br><br>Defendant. | NO.<br><br><br><br>**COMPLAINT** |

Plaintiff, through undersigned counsel, submits this complaint and alleges as follows:

### PARTIES, JURISDICTION AND VENUE

1. Plaintiff Jacqueline McMurrin was, at all times material hereto, a resident of the State of Kentucky. She brings this Complaint on behalf of herself and the statutory beneficiaries of Theron Hopkins, deceased.

2. The statutory beneficiaries of Theron Hopkins are Jacqueline McMurrin(mother), Kaiden Hopkins (son), KH (son, minor), and TH (son, minor).

3. This is an action against Defendant United States of America under the Federal Tort Claims Act, (28 U.S.C. § 2671, et seq.), and this Court has jurisdiction pursuant to 28 U.S.C. §1346(b)(1), for the wrongful death of Theron Hopkins by U.S. Customs and Border Protection ("CBP") in Yuma County, Arizona.

4. As a direct and proximate cause of the actions and inactions taken by the United States of America, by and through their border patrol agents, Theron Hopkins was killed in a motor vehicle collision on March 28, 2020.

5. Each of the above-named statutory beneficiaries have fully complied with the provisions of 28 U.S.C. § 2675 of the Federal Tort Claims Act.

6. Their respective Standard Form 95s with accompanying documents, previously served upon the Defendant, are incorporated herein by reference.

7. Each and every demand for relief contained in each and every Standard Form 95 is hereby reasserted.

8. Plaintiff's Form 95 was served on Defendant on March 18, 2022 which is attached as **Exhibit 1**. Plaintiff received a formal denial of its Form 95 on June 19, 2022, which is attached as **Exhibit 2** to this Complaint.

9. All acts and/or omissions complained of herein occurred within Yuma County, Arizona, and venue is proper in United States District Court.

10. Defendant United States of America, through its agency, U.S. Customs and Border Protection, operates Ports of Entry located throughout the State of Arizona.

11. Defendant United States of America, including but not limited to its directors, officers, operators, administrators, employees, agents, servants, and staff at the U.S. Customs

and Border Protection, are hereinafter collectively referred to as CBP.

12. Furthermore, Defendant is responsible for the negligent acts of their employees, agents, and servants under respondent superior and principles of agency.

13. Jurisdiction is proper under 28 U.S.C. § 1346(b)(1), as the damages claimed exceed the minimum amount in controversy of $75,000.00.

## BACKGROUND

14. On March 28, 2020, around 11:00 p.m., Theron Hopkins, a citizen of the United States, was a passenger in a vehicle driven by Riley Lewis, eastbound on Interstate 8 near Yuma, Arizona.

15. The Lewis vehicle stopped at a United States Customs and Border Protection checkpoint east of Yuma, Arizona.

16. Ms. Lewis was asked to move her vehicle to a secondary location inside the checkpoint.

17. Ms. Lewis failed to proceed to the secondary position and instead drove eastbound on Interstate 8 away from the subject checkpoint.

18. The Lewis vehicle was pursued by Border Patrol Agent Lewis Alfonso Vega Batista.

19. This vehicle pursuit took place around 11:00 pm and was on a barren stretch of eastbound Interstate 8 with limited traffic.

20. Border Patrol Agent Michael Steven Buchanan was in the front passenger seat of Border Patrol Agent Batista's Dodge Charger, and was handling communications with Border Patrol Agent Supervisor John Doe.

21. At all times material hereto, Border Patrol Agents Batista, Buchanan, and Supervisor Doe were acting in the course and scope of their employment and/or agency with Defendant United States of America.

22. Despite Ms. Lewis' failure to stop, Border Patrol Agent Batista, Border Patrol Agent Buchanan, and Border Patrol Agent Supervisor Doe had no reason to suspect Ms. Lewis or anyone else in the vehicle was a danger/threat to themselves or the public, or had they violated any law related to the United States International Border.

23. Border Patrol Agent Batista, Border Patrol Agent Buchanan, and Border Patrol Agent Supervisor Doe also had no reason to believe the Lewis vehicle, or its occupants had been involved in a violent crime.

24. Regardless of this knowledge or lack thereof, Border Patrol Agent Batista continued his pursuit of the Lewis vehicle eastbound on Interstate 8 and asked permission from Supervisor Doe to deploy a "PIT Maneuver" (Pursuit Intervention Technique) on the Lewis vehicle.

25. The PIT maneuver involves the pursing vehicle intentionally striking the rear quarter panel of the fleeing vehicle in an effort to spin the vehicle out.

26. When Border Patrol Agent Batista asked permission to deploy the PIT maneuver, he and the Lewis vehicle were driving through barren desert on Interstate 8.

27. When Border Patrol Agent Batista asked permission to deploy the PIT maneuver, there were few, if any, other vehicles in the vicinity on Interstate 8.

28. When Border Patrol Agent Batista asked permission to deploy the PIT maneuver, he and the Lewis vehicle were approximately 6 miles away from any town.

29. When Border Patrol Agent Batista asked permission to deploy the PIT maneuver, the Lewis vehicle and the occupants did not pose an imminent threat of danger to anybody.

30. Border Patrol Agent Buchanan radioed the request to execute the PIT Maneuver to Border Patrol Agent Supervisor Doe.

31. When Border Patrol Agent Buchanan communicated the request to PIT to Acting Border Patrol Agent Supervisor Doe, he either knowingly, recklessly, or negligently failed to advise as to the vehicle's speed.

32. Regardless of Border Patrol Agent Buchanan's level of intent, Acting Supervisor Doe must have known that vehicles on Interstate 8 would have been driving at a rate of speed higher than one which a safe PIT maneuver could be executed.

33. Acting Border Patrol Agent Supervisor Doe gave permission to Agent Batista to deploy the PIT maneuver without knowing the speed of the vehicles in violation of Emergency Driving and Vehicle Pursuit by CBP Border Patrol policy.

34. Acting Border Patrol Agent Supervisor Doe wrote in his March 29, 2020 report:

"I was aware that Agent [redacted] asked for Supervisor approval to perform a "PIT" maneuver on the vehicle. I was aware that Agent [redacted] who was in the primary pursuit vehicle, had previously used the "PIT" maneuver. Due to that experience, I was confident that Agent [redacted] would only ask for permission to use the "PIT" maneuver if it was completely necessary, and that he was familiar with the Offensive Driving Techniques Policy. Agent [redacted] stated that road conditions were good, traffic was light, and that he was on a straight portion of the roadway. After multiple unanswered attempts to get a [redacted] supervisor on the radio, I told Agent[redacted] "If you can "PIT" them, go ahead." I then heard Agent [redacted] state on the radio that there was a rollover accident near Mile Marker 26 of Interstate 8."

35. Border Patrol Agent Supervisor Doe gave permission to Deputy Batista to execute the PIT maneuver despite not possessing information on the Lewis vehicle's speed.

36. Border Patrol Agent Batista, Border Patrol Agent Buchanan, and Border Patrol Agent Supervisor Doe had ample opportunity to contemplate their decisions and actions, and these decisions and actions were made deliberately.

37. Border Patrol Agent Batista was travelling 87 miles per hour when the PIT maneuver was initiated on the Lewis vehicle.

38. As a result of the PIT Maneuver, the Lewis vehicle lost control and flipped killing both occupants, including Theron Hopkins.

39. Upon information and belief, Arizona Department of Public Safety Officers were just a few miles east of the Lewis vehicle when the PIT maneuver was executed.

40. Upon information and belief, Arizona Department of Public Safety Officers were preparing to deploy stop sticks in an effort to slow/stop the Lewis vehicle.

41. Upon information and belief, Border Patrol Agent Batista, Border Patrol Agent Buchanan, and Border Patrol Agent Supervisor Doe were aware of the Arizona Department of Public Safety's plan.

42. Nearly all law enforcement agencies in the United States, and the states and municipalities thereof, set maximum speeds for deploying PIT maneuvers. Most law enforcement agency speed limits on PIT maneuvers range between 25 miles per hour and 35 miles per hour.

43. Colliding with the rear of another vehicle at 87 miles per hour will almost certainly lead to that vehicle rolling and its occupants being seriously injured or killed.

44. Border Patrol Agent Batista, Border Patrol Agent Buchanan and Border Patrol Agent Supervisor Doe did not act in compliance with Customs and Border Protection policy

which would have found that the immediate danger created by executing the PIT Maneuver at 87 miles per hour outweighed the law enforcement benefit of the pursuit.

45. Had Border Patrol Agent Batista, Border Patrol Agent Buchanan and Border Patrol Agent Supervisor Doe acted in compliance with Customs and Border Protection policy, they would not have executed the PIT Maneuver at 87 miles per hour.

46. When Border Patrol Agent Batista intentionally struck Riley's truck with his Border Patrol vehicle while driving at 87 miles per hour, it predictably swerved and flipped, and Theron Hopkins was killed.

47. When Border Patrol Agent Batista intentionally struck Riley's truck with his Border Patrol vehicle while driving at 87 miles per hour, it predictably swerved and flipped, and Theron Hopkins was killed.

48. The Border Patrol Agents who executed the PIT Maneuver at 87 miles per hour breached their duty to the public by failing to act in compliance with Customs and Border Protection policy.

49. The actions of Border Patrol Agent Batista, Border Patrol Agent Buchanan, and Border Patrol Agent Supervisor Doe fell below the applicable standard of care and these actions were a cause of the death of Theron Hopkins.

50. As a result of their actions, Plaintiff has sustained emotional injuries and general and special damages in an amount to be proven at trial.

. . .

. . .

. . .

# COUNT I

## (NEGLIGENCE- WRONGFUL DEATH)

51.   Plaintiff incorporates by reference all previous allegations in this Complaint as set forth herein.

52.   At all times material hereto, Border Patrol Agents Batista and Buchanan, while acting in the course and scope of their employment and/or agency with Defendant United States of America, operated their U.S Customs and Border Protection vehicle in an unsafe, reckless, careless, negligent, and grossly negligent manner- ultimately causing the collision involving the Lewis vehicle.

53.   Border Patrol Agents Batista and Buchanan had a duty of care to protect the public, including Theron Hopkins, from their own careless or reckless conduct.

54.   Border Patrol Agents Batista and Buchanan had a duty to drive with due regard for the safety of others, including fellow motorists and vehicle passengers.

55.   Border Patrol Agents Batista and Buchanan had a duty to adhere to their own department's policies regarding permissive pursuits.

56.   Border Patrol Agents Batista and Buchanan breached these duties.

57.   Border Patrol Agent Supervisor Doe had a duty to obtain accurate and complete information before relaying information to agents in the field.

58.   Border Patrol Agent Supervisor Doe had a duty to verify the speed of the Lewis vehicle before permitting the PIT Maneuver to be executed.

59.   Border Patrol Agent Supervisor Doe breached these duties.

60. The negligent and/or reckless acts and omission of Border Patrol Agent Batista, Border Patrol Agent Buchanan, and Border Patrol Agent Supervisor Doe was the cause of Theron Hopkins wrongful death in violation of A.R.S. § 12-611 et seq.

61. As a direct and proximate result of Border Patrol Agents Batista, Buchanan, and Supervisor Doe's actions and inactions, Plaintiff has experienced, and will continue to experience, pain, grief, sorrow, anguish, stress, shock, and mental suffering as a result of Theron Hopkins' wrongful death.

62. As a direct and proximate result of Border Patrol Agents Batista, Buchanan, and Supervisor Doe's actions and inactions Plaintiff has been, and will continue to be, deprived of Theron Hopkins' love, affection, companionship, care, protection, consortium, guidance, society, companionship, counsel, advice and solace as a result of his wrongful death.

## COUNT II

### (NEGLIGENT TRAINING AND SUPERVISION)

63. Plaintiff incorporates each and every allegation above as if fully set forth herein.

64. Border Patrol Agent Acting Supervisor Doe should not have authorized the PIT maneuver.

65. Border Patrol Agent Batista and Border Patrol Agent Buchanan should not have requested permission to conduct a PIT maneuver.

66. In requesting the PIT, Border Patrol Agent Batista and Border Patrol Agent Buchanan further failed to communicate the speed of the vehicle and Acting Supervisor Does failed to obtain the required information before providing authorization.

67. As a direct and proximate result of Border Patrol Agents Batista, Buchanan, and Supervisor Doe's actions and inactions, Plaintiff has experienced, and will continue to experience, pain, grief, sorrow, anguish, stress, shock, and mental suffering as a result of Theron Hopkins' wrongful death.

68. As a direct and proximate result of Border Patrol Agents Batista, Buchanan, and Supervisor Doe's actions and inactions Plaintiff has been, and will continue to be, deprived of Theron Hopkins' love, affection, companionship, care, protection, consortium, guidance, society, companionship, counsel, advice and solace as a result of his wrongful death.

## JURY TRIAL DEMAND

Plaintiffs request a trial by jury in this matter.

## **PRAYER**

WHEREFORE, Plaintiff prays for judgment against the Defendants, and each of them, as follows:

    A.    For general damages and losses past and in the future in an amount reasonable and proper;

    B.    For a sum that is reasonable and just for the wrongful death of Theron Hopkins;

    C.    For Plaintiff's costs incurred herein;

    D.    For pre- and post-judgment interest as allowed by law; and

    E.    For such other and future relief as this Court deems just and proper.

. . .

. . .

. . .

DATED this 9th day of August 2022.

**O'STEEN & HARRISON, PLC**

_[signature]_

_____
Matthew P. MacLeod
300 W. Clarendon Ave., Suite 400
Phoenix, Arizona 85013-3424
Attorneys for Plaintiff
